**In the Matter of the Adoption of DELVIN DESSUIT, JR.,
and CELICIA MARIE DESSUIT, Minors**

Miscl. No. 76-764

District Court of the Virgin Islands

Div. of St. Thomas and St. John

December 6, 1977

JAMES A. RICHARDS, JR., ESQ. (RICHARDS & MAYNARD),
St. Thomas, V.I., *for petitioner*

ALPHONSO A. CHRISTIAN, ESQ., St. Thomas, V.I., *for respondent*

CHRISTIAN, *Chief Judge*

### MEMORANDUM OPINION

Confronting the Court at this time is what has been described in another setting as "a rigid statutory process

that could end in the total destruction of (a man's) fatherhood". In re Blumenthal's Adoption, 5 V.I. 231, 242 (3d Cir. 1965).

Petitioner, Valentine Hendricks, is before the court seeking to adopt the two children of his wife, Carol Mae Hendricks. The children are Delvin Dessuit, Jr. and Celicia Marie Dessuit, 11 and 10 years of age, respectively. His efforts are being thwarted by Delvin Dessuit, Sr., father of the children, who has refused to give his consent. The question, the answer to which would be wholly dispositive of the cause, is whether in the circumstances, the consent of the natural father is necessary.

The issue raised is governed by § 142(b) of Title 16 of the V.I. Code. As here pertinent, the section reads:

If either parent . . . has willfully deserted and neglected to provide proper care and maintenance for the child for one year next preceding the time of filing the petition . . . the court may proceed as if such parent was dead, and, in its discretion, may appoint some suitable person to act in the proceeding as guardian ad litem of the child and give or withhold the consent required by subsection (a) of this section.

The Court has already dictated into the record sufficient findings of fact and conclusions of law to support any decision it may now make. No good purpose would be served by repeating what has already been said, other than to point out that the record clearly portrays a pattern of studied neglect of his children by the objector, Delvin Dessuit, Sr. While he lived in the Virgin Islands and was employed as a police officer, he did not properly support his children. Indeed it seems that for the last few months that he was in St. Thomas he gave them nothing. After his departure for the mainland and his taking up residence in Washington, D.C., his record only worsened. It is unquestionably true that from and after July of 1975, and up until the filing of this petition on November 3, 1976, objec-

tor had not contributed a single penny in his children's support; had not contacted or attempted to contact them in any way from and after August of 1975, not even to the extent of the simplest remembrance on their birthdays, or at Christmastime. Convinced that the words of the statute under consideration requires no more stringent construction than that given "wilful desertion" as a ground for divorce in former section 104(4) of the same title of our Code, I am more than satisfied, therefore, that within the meaning of § 142(b), this objector "wilfully deserted and neglected to provide proper care and maintenance" for his children for more than the year immediately preceding the filing of this petition. It is significant, and it bears mention, that even though the mother of the children wrote to objector on August 6, 1976, informing him of her husband's desire to adopt the children and pointing out to him the difficult time she was having in properly rearing the children and how her "husband had assumed the total responsibility for the children", the objector was not moved to assume his legal responsibilities.

Even counsel for the objector in his post-trial memorandum does not contend that his client contributed to his children's upbringing or sustenance within the critical year. In line with objector's testimony the suggestion is advanced that Mr. Dessuit could not support his children because he was either unemployed for a good portion of his sojourn in Washington, D.C., or was earning an insufficient sum because he was serving a probationary period prior to full appointment. Such testimony however, the Court does not find to be credible. Objector chose to live in what must be taken as the suburbs of Washington, elected not to use public transportation to and from work but rather opted to purchase an automobile for which he never intimated at any time he was in arrears on the payment. The Court is unconvinced that objector could not have

maintained himself in Washington in the style in which it is manifest that he did, while unemployed, and depending solely on the largess of his father, receiving a twenty dollars here, and a twenty dollars there. In this connection, the Court notes that at no time did objector ask his father to assist him with the support of the children. This burden he left entirely upon the children's mother and on their stepfather, who seems to have willingly, in financial and all other respects, made up for the shortcomings of Mr. Dessuit, Sr.

Counsel for objector while tacitly admitting objector's abandonment of his children asks that the Court give him another chance by putting him on a sort of probationary period for six months to a year. The Court does not believe that such an effort would be fruitful. The past performance of objector militates strongly against the success of such a venture. So does the objector's present attitude. Even at the present time, although he says he has at least $500 that he could turn over to the children's mother, he has deliberately refrained from doing so, perhaps hedging his bet, so to speak, to await the outcome of this proceeding. Moreover, as objector intimated in response to questions, his remarriage is a distinct possibility. One can readily infer from what has transpired over the years that when objector takes on new and added responsibilities in Washington, D.C., even less thought, concern and consideration will be given to those he has left in the Virgin Islands. Besides all this it is most difficult to discern how the father role can be effected across the expanse of ocean separating Washington, D.C. and the Virgin Islands. Certainly objector has shown no inclination to remain in the Virgin Islands, or to have the children reside with him in Washington.

■ Going beyond the fact that objector abandoned his children, the Court is bound to take into consideration

just what is in the best interest of these minors. The testimony compels the finding that the home in which they are presently being reared presents a most wholesome atmosphere for their proper growth, physically, mentally and in all other respects. Judging once more from the testimony it is clear that the children already consider petitioner to be their father. They so address him and even though instructed not to do so, attempt to hand in their work at school under the name of Hendricks rather than Dessuit. And as the Department of Social Welfare, which at the Court's behest, investigated this case, has concluded:

He (petitioner) has been able to establish a good, open, father relationship with these children

and again

A very close family relationship has been established which can be further displayed by their (the children) reference to him (petitioner) as their father.

The Court heartily concurs in these conclusions of the Department of Social Welfare. However our statute might be construed, strictly as has sometimes been advocated, or liberally, as seems to be the modern trend, the conclusion is inescapable that this natural father has lost the right to raise any objection to the adoption of his children by their mother's husband. By way of emphasizing the close family relationship that exists in the Hendricks' home, the court notes that the children and their mother are members of a Lutheran congregation whereas Mr. Hendricks is of the Moravian denomination. Mr. Hendricks is now being instructed in the Lutheran faith so that the entire family may worship as one. The Court cannot help but call to mind the oft repeated saying "The family that prays together, stays together". Viewed from any consideration or from any aspect, this already closely knit family unit should not be disturbed. I conclude, therefore, that

the adoption of Delvin Dessuit, Jr. and Celicia Marie Dessuit may proceed without the consent of the objector.

The statute authorizes the Court, in its discretion, to appoint a guardian ad litem for these children, whose office it would be to either consent or object to the adoption. I choose to exercise my discretion by not making such an appointment in view of the fact that on the Court's behalf, the Department of Social Welfare of the Government of the Virgin Islands has already conducted a thorough investigation of the overall situation, has filed a report strongly recommending the adoption and up to the date of trial, advocated that the petition be granted.

The hearing on the adoption of the children will be scheduled in due course.